J-A14013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| VLAD POLLACK, ALLEN ALEXANDER, ALLCARE DENTAL GROUP, AND FAMILY DENTAL OFFICE, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| DMITRY KARAGODSKY AND PERFECT SMILE, P.C. | : | |
| | : | |
| Appellants | : | No. 304 EDA 2018 |

Appeal from the Judgment Entered January 10, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 140401671

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED NOVEMBER 14, 2018**

Appellants, Dmitry Karagodsky and Perfect Smile, P.C., appeal from the judgment entered in the Philadelphia County Court of Common Pleas, following a bench trial verdict in favor of Appellees, Vlad Pollack, Allen Alexander, Allcare Dental Group, and Family Dental Office, LLC, in the underlying action for breach of a settlement agreement.  We affirm.

In its original opinion, the trial court set forth the relevant facts and procedural history of this case as follows:

### Summary of Facts

In 2009, [Appellee] Vlad Pollack ("Pollack"), [Appellant] Dmitr[y] Karagodsky, D.D.S. ("Dr. Karagodsky") and [Appellee] Allen Alexander ("Alexander") orally agreed to form a for-profit dental clinic business in Philadelphia. [Appellant] Dr. Karagodsky was a successful dental

_____
*   Retired Senior Judge assigned to the Superior Court.

practitioner operating his own separate dental clinic. [Appellee] Pollack, a businessman, owned independent dental clinics in Philadelphia. [Appellee] Alexander, a successful manager of dental practices in the Philadelphia region, worked as an employee of [an Appellee] Pollack-owned company called Family Dental Office, LLC, aka [Appellee] Family Dental Group ("Family Dental").

Initially agreeing to share equally in profits, [Appellant] Dr. Karagodsky, [Appellee] Pollack, and [Appellee] Alexander formed an unassociated business entity which relied on [Appellant] Dr. Karagodsky's dental medicine license and his insurance "provider" number to qualify for insurance payments. [Appellees] Pollack and Alexander added their Family Dental corporate network to the new business venture, and they agreed to manage and administer the new business. To keep his interest in the new venture separate from his other clinics, [Appellant] Dr. Karagodsky formed [Appellant] Perfect Smile, P.C., of which he was the sole owner.

The new dental clinical business was known to the public as "Perfect Smile." The clinic hired dentists other than [Appellant] Dr. Karagodsky as independent contractors to perform most of the dental work. Initially, [Appellant] Dr. Karagodsky agreed to provide his own dental clinical services two days a week for the new business while [Appellees] Pollack and Alexander agreed to perform all administrative duties, including hiring and firing dentists, billing, collecting accounts receivable, marketing, purchasing, payroll, tax preparation, and developing expansion plans for more clinics under the Perfect Smile name.

This new dental business organized by the three men was high volume and relied heavily on timely and accurate insurance billing. Nothing memorializing their agreement was set in writing. Sometime after the Perfect Smile clinic was opened, [Appellant] Dr. Karagodsky and the other two men agreed to change [Appellant] Dr. Karagodsky's profit structure allowing him to stop providing his own dental services to the business. The men agreed that [Appellant] Dr. Karagodsky's annual profit would be 11 percent of gross revenue going forward, not one-third of net profits. This

modification was not put into writing either. By 2013, when the clinical business known as Perfect Smile was dissolved, the men were running four clinics with gross revenue in excess of $2,000,000.

Toward the end of their business run, [Appellee] Pollack organized [Appellee] Allcare Dental Group LLC ("Allcare") in 2013 with [Appellee] Alexander's involvement. Neither [man] told [Appellant] Dr. Karagodsky about Allcare's existence until [Appellant] Dr. Karagodsky saw the name on the door of a Perfect Smile clinic was "Allcare" instead of "Perfect Smile." Not surprisingly, the Perfect Smile business arrangement soon collapsed.

[Appellant] Dr. Karagodsky, [Appellee] Alexander, and [Appellee] Pollack decided to dissolve the Perfect Smile business amicably. With attorney involvement, the three men negotiated a Mutual Release and Settlement Agreement (hereinafter, the "Settlement Agreement") which all three men signed on November 2, 2013. This Settlement Agreement is clear and comprehensive. [Appellees] Pollack and Alexander agreed that [Appellant] Dr. Karagodsky was entitled to a portion of revenue that was still due from dental insurance carriers after November 2, 2013. [Appellees] Pollack and Alexander also agreed to indemnify [Appellant] Dr. Karagodsky. They agreed to reimburse him individually and/or his Perfect Smile, P.C. for money either owed or might owe after resolution of several lawsuits filed against them during the course of their 2009-2013 business venture. In exchange, [Appellant] Dr. Karagodsky agreed that [Appellee] Pollack's Allcare Dental Group, LLC would assume ownership of the business formerly operating under the "Perfect Smile" name. This included its patient charts and lists. The men agreed [Appellee] Allcare would not use [Appellant] Dr. Karagodsky's dental license to certify authorization for insurance payments.

Other Settlement Agreement terms allocated accounts receivable from insurance companies for dental work already performed. As part of their negotiated allocation, the parties agreed that a lump sum of $80,000 was to be paid to [Appellant] Dr. Karagodsky by [Appellees] Pollack and Alexander in eight monthly $10,000 increments

- 3 -

beginning on November 1, 2013, running through June 1, 2014. There was no term prohibiting [Appellees] Pollack and Alexander from paying this $80,000 from a checking account in [Appellee] Allcare's name.

Finally, [t]he Settlement Agreement includes a release characterized as: "Full and Final Settlement of a dispute between the Parties with respect to the business arrangements, payment of management fees, distribution of profits and operation of the Entities, as well as the ownership of the office equipment, office supplies and inventory."

[Appellees] Alexander and Pollack paid more than $30,000 in three installments over the next three months. However, a dispute arose over a portion of checks totaling $62,426.00 paid by insurance companies to [Appellant] Perfect Smile, P.C. [Appellees] Pollack and Alexander believed a portion of the money was due to them under the accounts receivable allocations of the Settlement Agreement.

[Appellant] Dr. Karagodsky disagreed and refused to make the reimbursement, thereby triggering a breach of the Settlement Agreement. Evidence shows [Appellees] Pollack and Alexander were in fact jointly owed $23,926.50. Upon [Appellant] Dr. Karagodsky's breach, [Appellees] Pollack and Alexander withheld a $10,000 payment due on February 4, 2014. On February 19, 2014, [Appellant] Dr. Karagodsky filed a *pro se* confession of judgment in the Commerce Court in the amount of $162,000 including interest and collection fees. This confession of judgment was struck by the Honorable Gary S. Glazer who opened judgment on March 7, [2014]. The court found [Appellant] Dr. Karagodsky had executed a warrant of attorney, though he is not member of the Bar. In doing so, [Appellant] Dr. Karagodsky impermissibly lodged liens on [Appellee] Allcare accounts. [Appellee] Allcare owner [Appellee] Vlad Pollack paid legal fees in the amount of $21,536.68 to dislodge the liens. Continuous litigation in the Commerce Court has followed.

### Procedural History

On April 16, 2014, [Appellees] Vlad Pollack, Allen Alexander, and Family Dental Office (hereinafter, "Family Dental")

(collectively hereinafter, [Appellees]) filed a complaint against Dmitry Karagodsky, D.D.S. and Perfect Smile, P.C. (hereinafter, collectively, [Appellants]). [Appellants] filed counterclaims on May 12, 2014 and these were answered.

[Appellants] later filed a motion to amend their own answer so they could add more counterclaims. These are conversion, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and breach of contract, civil conspiracy, tortious interference with contractual relations, and an accompanying request for preliminary and injunctive relief. [Appellants] also claimed breach of contract and failure to indemnify. [Appellees] filed preliminary objections to [Appellants'] counterclaims on October 9, 2015. [Appellants] answered on February 2, 2016. [Appellees'] preliminary objections to [Appellants'] counterclaims were overruled.

[Appellee] Allcare subsequently filed for protection in bankruptcy court which lodged an automatic stay covering [Appellee] Allcare. However, a stay of this entire case was inadvertently docketed and a court order was entered lifting deferral of trial involving all other parties. We also consolidated ***Pollack v. Karagodsky***, No. 140401671, filed August 16, 2014 and ***Alexander v. Pollack***, No. 150402148, filed April 21, 2015. Evidence relating to the Settlement Agreement was common to both cases, and consolidation was thought to be in the interest of judicial economy.

A bench trial began on January 2[3], 2017 and continued through January 27, 2017. After evidence on the Settlement Agreement was completed, this court separated the two cases and closed evidence on ***Pollack v. Karagodsky***. Further evidence and argument was taken later in ***Alexander v. Pollack*** without Dr. Karagodsky who is not a party in that case.

Findings of Fact and Conclusions of Law (hereinafter, "Finding and Conclusions") in ***Pollack v. Karagodsky*** were entered on March 2, 2017. This court entered a contemporaneous order granting judgment in favor of [Appellees] and against [Appellant] Dr. Karagodsky in the amount of $40,000. [This court] also entered judgment in

- 5 -

favor of [Appellee] Pollack and against [Appellant] Dr. Karagodsky for an additional amount of $21,536. In our Findings and Conclusions, [this court] stated [Appellant] Dr. Karagodsky's counterclaims were not supported by a preponderance of evidence but [this court] unfortunately did not specifically address [Appellant] Perfect Smile's counterclaims.

[Appellants] Dr. Karagodsky and Perfect Smile, P.C. filed a notice of appeal to the Superior Court on March 23, 2017. Subsequently, they filed post-trial motions ("First Post-Trial Motions") on April 3, 2017. On June 1, 2017, this court entered an Opinion in response to the appeal. The Superior Court quashed [Appellants'] appeal on grounds of lack of jurisdiction. The appellate court observed this court had not entered legal judgment because our purported judgment had been entered before the ten day period to file post-trial motions had expired. The appellate court also instructed this court to resolve all of [Appellants'] counterclaims on remand.

On September 13, 2017, [this court] nullified our March 2 Judgment Order and entered a new order and judgment in favor of [Appellees] and against [Appellant] Dr. Karagodsky. [This court] dismissed all counterclaims filed by both [Appellants] Dr. Karagodsky and Perfect Smile, P.C. In a separate Order also dated September 13, 2017, [this court] dismissed [Appellants'] April 3, 2017 First Post-Trial Motions as untimely.

Noting this court had again entered judgment prematurely, [Appellants] filed new post-trial motions following our September 13, 2017 judgment ("Second Post-Trial Motions"). On review, this court understood we had again contributed to procedural confusion—this time by including in our order a judgment before addressing actually filed post-trial motions. On September 27, 2017, [this court] granted that part of [Appellants'] Second Post-Trial Motions that sought correction of the premature judgments. [This court] did so by vacating paragraphs 3, 4, and 5 of the [September 13], 2017 judgment and order. These three paragraphs had prematurely entered judgment in favor of [Appellees] and against [Appellants'] claims and counterclaims.

- 6 -

> Finally, this court entered an Amended Findings of Facts and Conclusions of Law on September 27, 2017. This document formally states "[a]ll counterclaims of [Appellants] Dr. Karagodsky and Perfect Smile, P.C. against [Appellees] Vlad Pollack, Allen Alexander, and Family Dental Office, LLC are not proved by preponderance of the evidence." [This court] then denied all other Second Post-Trial Motion claims as unripe and did so without prejudice to [Appellants] filing new post-trial motions. These were filed on October 5, 2017 ("Third Post-Trial Motions") and are now under review here.
>
> On the merits, [Appellants] first complain this court improperly dismissed [Appellee] Allcare as a party to trial. Second, [Appellants] claim this court erred by awarding $21,536.68 in attorney's fees to [Appellee] Pollack. They claim it was [Appellee] Allcare and not [Appellee] Pollack who paid these fees. Third, [Appellants] claim a joint award to [Appellees] Pollack and Alexander in the amount of $40,000 is wrong. Fourth, [Appellants] argue the $21,536.68 this [c]ourt awarded in attorney's fees after [Appellant] Dr. Karagodsky's *pro se* confession of judgment was not supported by evidence. Finally, [Appellants] argue the November 2, [2013] Settlement Agreement is void for fraud, illegality, or fraudulent inducement. All these claims fail for the reasons now explained.

(Trial Court Opinion, filed December 19, 2017, at 2-9) (all internal footnotes omitted). The court denied Appellants' post-trial motions on December 19, 2017. Based on an arithmetic miscalculation, the court also reduced the insurance payment award to Appellees Pollack and Alexander from $40,000.00 to $23,926.50. On January 10, 2018, judgment was entered on the verdict. Appellants timely filed a notice of appeal on January 17, 2018. The court did not order Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and none was filed.

Appellants raise two issues for our review:

WHETHER THE TRIAL COURT SHOULD REVERSE THE FOLLOWING TWO (2) MONETARY AWARDS AGAINST [APPELLANT]: (A) THE $23,926.50 AWARD IN FAVOR OF [APPELLEES] VLAD POLLACK AND ALLEN ALEXANDER FOR INSURANCE PAYMENTS; AND, (B) THE $21,536.68 AWARD TO VLAD POLLACK FOR ATTORNEY'S FEES.

WHETHER THE CASE SHOULD BE REMANDED BACK TO THE TRIAL COURT TO RETRY THE CASE CONSISTENT WITH THE TESTIMONY, DOCUMENTS, AND FACTS ESTABLISHED AT TRIAL.

(Appellants' Brief at 3).

A trial court's denial of a motion for a new trial implicates the following principles:

"[A]bsent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." **Harman ex rel. Harman v. Borah**, 562 Pa. 455, 466, 756 A.2d 1116, 1121-22 (2000).

In **Harman**, the Court noted that the trial court must follow a two-step process in responding to a request for a new trial. The trial court must determine whether a factual, legal or discretionary mistake was made at trial. If the trial court determines that one or more mistakes were made, it must then evaluate whether the mistake provided a sufficient basis for granting a new trial. Moreover, the Court noted[:] "A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake."

The Court then set forth an additional two-step analysis for appellate review of a trial court's determination to grant or deny[9] a new trial. First, the appellate court must examine the decision of the trial court to determine whether it agrees that a mistake was, or was not, made. In so doing, the Court noted

that the appellate court must apply the appropriate standard of review.  If the alleged mistake involved an error of law, the appellate court must scrutinize for legal error.  If the alleged mistake at trial involved a discretionary act, the appellate court must review for an abuse of discretion.  The Court reiterated that a trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

> [9] The Court specifically held that a review of a denial of a new trial requires the same analysis as a review of a grant of a new trial.

If the appellate court agrees with the trial court's determination that there were no prejudicial mistakes at trial, then a decision by the trial court to deny a new trial must stand and we need not reach the second prong of the analysis.  If the appellate court discerns that a mistake was made at trial, however, it must analyze whether the trial court abused its discretion in ruling on the motion for a new trial.

*Ettinger v. Triangle-Pacific Corp.*, 799 A.2d 95, 106 (Pa.Super. 2002), *appeal denied*, 572 Pa. 742, 815 A.2d 1042 (2003) (internal citations omitted).  We will overturn the decision only where the trial court abused its discretion or committed an error of law that controlled the outcome of the case.  We view the evidence in the light most favorable to the verdict winner to determine whether a new trial would produce a different verdict.  Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.  Further, a new trial is granted only where the verdict is so contrary to the evidence as to shock one's sense of justice, not where the evidence is conflicting or where the court might have reached a different conclusion on the same facts.

*MacNutt v. Temple University Hosp., Inc.*, 932 A.2d 980, 985 (Pa.Super. 2007) (*en banc*), *appeal denied*, 596 Pa. 708, 940 A.2d 365 (2007) (some internal citations and quotation marks omitted).

A [judgment n.o.v.] can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for [judgment n.o.v.], we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict…. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact…. A [judgment n.o.v.] should be entered only in a clear case.

*Cruz v. Northeastern Hosp.*, 801 A.2d 602, 607 (Pa.Super. 2002) (citing

*Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 304-05

(Pa.Super. 1999)).

When reviewing a judgment from a non-jury trial, "[w]e must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion." *Southwestern Pennsylvania Regional Council, Inc. v. Gentile*, 776 A.2d 276, 281 (Pa.Super. 2001).

Appellants argue the trial court awarded the insurance payment proceeds to the wrong parties. Appellants contend the payment should have been awarded to Appellee Allcare and not to Appellees Pollack and Alexander. Appellants maintain the only reason the money owed to Appellee Allcare was

awarded to Appellees Pollack and Alexander was that Appellee Allcare was absent from the suit due to bankruptcy proceedings. Appellants also allege the trial court improperly rendered judgment against Appellant Dr. Karagodsky individually, where Appellant Perfect Smile received the insurance money for its performance of dental services. Appellants reason the judgment should have been entered against Appellant Perfect Smile instead. Notwithstanding these arguments, Appellants further allege Appellee Allcare is not actually owed any money at all. Appellants assert there are no documents in evidence, including the Settlement Agreement, which assign any payment from Perfect Smile to Allcare. Appellants instead maintain that any insurance payments Appellants received, both before and after the alleged Settlement Agreement, belong to Appellants Perfect Smile and Dr. Karagodsky.

Appellants also contend the attorney fees awarded to Appellee Pollack were improper. Appellants emphasize that only Appellee Allcare's corporate bank accounts were garnished, requiring Appellee Allcare to hire a lawyer to unfreeze the accounts; so only Appellee Allcare should be awarded any attorney's fees, as Appellee Allcare paid for the law firm's services.

Finally, Appellants claim the Settlement Agreement is void *ab initio* or, in the alternative, breached and voidable. Appellants insist that the Settlement Agreement was void *ab initio* as a result of Appellees' unknown fraud, illegality, or fraudulent inducement prior to execution of the Settlement

Agreement. Appellants aver Appellees Pollack and Alexander stole Appellant Dr. Karagodsky's business by doing dental work for Perfect Smile patients using Perfect Smile dental records, while billing under their new entity, Appellee Allcare. Alternatively, Appellants reason Appellees breached the Settlement Agreement by stopping payment of the eight monthly installments of $10,000 after only the third month. Appellants additionally assert Appellees breached the Settlement Agreement by failing to defend and indemnify Appellants in several lawsuits filed against Appellants during the course of their 2009-2013 business venture. Based on the foregoing, Appellants conclude this Court should vacate the judgment completely or reverse and remand for a new trial. We disagree.

As a prefatory matter, we observe that appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. *Rosselli v. Rosselli*, 750 A.2d 355 (Pa.Super. 2000), *appeal denied*, 564 Pa. 696, 764 A.2d 50 (2000) (citing Pa.R.A.P. 2101). *See also* Pa.R.A.P. 2114-2119 (addressing specific requirements of each subsection of brief on appeal). Regarding the argument section of an appellate brief, Rule 2119(a) provides:

> **Rule 2119. Argument**
>
> **(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

- 12 -

Pa.R.A.P. 2119(a).  Importantly:

> The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities.  This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority.  Failure to cite relevant legal authority constitutes waiver of the claim on appeal.

*In re Estate of Whitley*, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (internal citations and quotation marks omitted).  *See also Lackner v. Glosser*, 892 A.2d 21 (Pa.Super. 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention); *Estate of Haiko v. McGinley*, 799 A.2d 155 (Pa.Super. 2002) (stating rules of appellate procedure make clear appellant must support each question raised by discussion and analysis of pertinent authority; absent reasoned discussion of law in appellate brief, this Court's ability to provide appellate review is hampered, necessitating waiver of issue on appeal).

Instantly, Appellants cite no law whatsoever in any of the argument sections.  The only law cited on appeal is a very generic scope and standard of review.  Appellants' failure to develop any of their claims, with citation to relevant and supporting legal authority, precludes meaningful review and constitutes waiver of all issues on appeal.  *See* Pa.R.A.P. 2119(a); Pa.R.A.P.

2101; ***Estate of Whitley, supra***.

Moreover, Appellants' claims would merit no relief even if properly presented. The well-reasoned opinion of the Honorable Ramy I. Djerassi fully discusses and properly disposes of the questions presented. (***See*** Trial Court Opinion at 13-21) (finding: Appellee Pollack experienced personal loss when Appellant Dr. Karagodsky improperly tried to execute a *pro se* confession of judgment; Settlement Agreement required breaching party to pay reasonable attorney's fees and costs, which other party incurred to enforce agreement; court awarded Appellee Pollack $21,536.68 in attorney's fees to correct harm Appellant Dr. Karagodsky caused when he improperly confessed judgment; regarding $40,000.00 insurance award to Appellees Pollack and Alexander, Settlement Agreement required Appellant Dr. Karagodsky to reimburse Appellees Pollack and Alexander in their individual capacities; due to initial arithmetic error, court reduced amount to $23,926.50; Settlement Agreement is valid and enforceable contract, which Appellant Dr. Karagodsky and Appellees Pollack and Alexander negotiated with aid of legal counsel and is not "void by its terms," as Appellants allege; regarding indemnity issue, when Appellant Dr. Karagodsky breached Settlement Agreement, three indemnity cases were still open; Appellant Dr. Karagodsky failed to supply Appellees Pollack and Alexander with information concerning those lawsuits; while Appellees Pollack and Alexander were figuring out with their attorneys how to indemnify Appellant Dr. Karagodsky, he improperly confessed judgment;

additionally, upon Appellant Dr. Karagodsky's anticipatory breach of Settlement Agreement, Appellees Pollack and Alexander were not required to make installment payment due on 2/4/14 under Settlement Agreement). The record supports the court's decision, and we would have no reason to disturb it. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/18